# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>LUNG INSTITUTE, LLC, and TAMMY RIVERO and MARILYN MAZZA, individually and on behalf of all others similarly situated<br><br>Defendants. | Civil Action No.:<br><br>**DECLARATORY RELIEF REQUESTED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Capitol Specialty Insurance Corporation ("CSIC"), through its undersigned counsel, files this Complaint seeking a judicial declaration that Healthcare Organizations Liability Insurance Policy No. MM20152340, which CSIC issued to Regenerative Medicine Solutions, LLC ("RMS") for the April 9, 2015 to April 9, 2016 **Policy Period** (the "Policy")[1] does not provide Defendant Lung Institute, LLC ("Lung Institute") with coverage for a jury verdict entered against it in the lawsuit captioned *Tammy Rivero and Marylin Mazza, Individually and On Behalf of All Others Similarly Situated v. Lung Institute, LLC*, No. 16-CA-7765 (Fla. Cir. Ct., Hillsborough County) (the "Underlying Lawsuit"), and alleges as

---

[1] A true and correct copy of the Policy is attached hereto as Exhibit A.

follows:

## INTRODUCTION

1. Tammy Rivero and Marylin Mazza, individually and on behalf of all others similarly situated (the "Claimants"), filed the Underlying Lawsuit alleging that Lung Institute, through omissions, engaged in unfair and deceptive trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The Claimants filed a Sixth Amended Complaint (the "SAC")[2] on July 5, 2019, and sought certification for a class of Lung Institute's patients from August 17, 2012 to August 17, 2016.

2. Lung Institute gave notice of the Underlying Lawsuit to CSIC. Subject to a reservation of rights under the Policy and applicable law, CSIC retained mutually agreeable counsel to provide Lung Institute with a defense in the Lawsuit. At the same time, CSIC advised Lung Institute that for multiple reasons the Policy would not provide it with indemnity coverage should it be determined that it engaged in the unfair and deceptive trade practices alleged by the Claimants.

3. Class certification, based on three alleged omissions, was granted in May 2020, and the Underlying Lawsuit went to trial in June 2024. At the conclusion of the trial, the jury determined that Lung Institute violated FDUTPA and that the services Lung Institute provided to the class members were "valueless."

---

[2] A true and correct copy of the SAC is attached hereto as Exhibit B.

4. Shortly after the verdict was rendered, CSIC advised Lung Institute that the Policy will not provide it with coverage: (a) for the final verdict Claimants seek to enter – a verdict that includes Lung Institute refunding $9,077,749.48 for the "valueless" services it provided the class members; or (b) the Motion to Tax Attorney's Fees and Costs in which the Claimants request that the court award them attorneys' fees and costs incurred in litigating the Underlying Lawsuit, along with "an appropriate contingency risk multiplier."

5. An actual case or controversy exists between the parties regarding the interpretation and application of the Policy.

6. Accordingly, CSIC brings this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57, seeking a judicial determination that the Policy does not provide indemnity coverage to Lung Institute for the Underlying Lawsuit.

7. This action is currently ripe for adjudication.

## I. THE PARTIES

8. Plaintiff CSIC is a Wisconsin-domiciled surplus lines insurer authorized to do business in Florida. CSIC's principal place of business is in the State of Wisconsin.

9. Defendant Lung Institute is a Florida limited liability company. Upon information and belief, Lung Institute's sole member is Regenerative Medicine Solutions, LLC.

10. Upon information and belief, the following natural persons are members of Regenerative Medicine Solutions: Jeremy Daniels who, upon information and belief, resides and/or works in the State of Ohio; Ann Sells Miller, who, upon information and belief, resides and/or works in the State of Florida; Lynne Margnelli who, upon information and belief, resides and/or works in the State of Florida; and Jimmy St. Louis, who resides and/or works in the State of Florida.

11. Defendant Tammy Rivero is a natural person who, upon information and belief, resides and/or works in the State of North Carolina. Ms. Rivero is named as a nominal defendant in this declaratory judgment action due to her status as a class representative in the Underlying Lawsuit. Although no affirmative relief is sought against Ms. Rivero at this time, a declaration that the Policy does not provide indemnity coverage for the Underlying Lawsuit will be binding on her and the class members in the Underlying Lawsuit.

12. Defendant Marilyn Mazza is a natural person who, upon information and belief, resides and/or works in the State of Florida. Ms. Mazza is named as a nominal defendant in this declaratory judgment action due to her status as a class representative in the Underlying Lawsuit. Although no affirmative relief is sought against Ms. Mazza at this time, a declaration that the Policy does not provide indemnity coverage for the Underlying Lawsuit will be binding on her and the class members in the Underlying Lawsuit.

13. Ms. Rivero and Ms. Mazza are named as defendants in their capacity as representatives of the class and in lieu of naming every class member as a nominal defendant.

## II. JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between CSIC, which is a citizen of Wisconsin, and the Defendants, which are citizens of Florida, Ohio, and North Carolina, and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

15. This judicial district is the proper venue for this Underlying Lawsuit pursuant to 28 U.S.C. § 1391(b)(2). Upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III. STATEMENT OF FACTS

### A. Nature of the Underlying Lawsuit

16. On or about August 17, 2016, Ms. Rivero commenced the Underlying Lawsuit against Lung Institute.

17. The Claimants filed the SAC on July 5, 2019.

18. According to the Claimants, Lung Institute provided "'stem cell' therapy procedures that purport to treat a litany of serious diseases." Ex. B at ¶ 12.

19. Lung Institute allegedly advertised that the benefits of its procedures included the regeneration, repair, or regrowth of lung tissue. *Id.* at ¶ 13.

5

20. The Claimants allege that as a result of these advertising practices, Lung Institute is "essentially a marketing company masquerading as a medical 'institute.'" *Id.* at ¶ 14.

21. The crux of the Claimant's allegations in the Underlying Lawsuit is that through its allegedly deceptive marketing practices, Lung Institute deceived and misled elderly patients by using commission-based salespeople titled "Patient Coordinators" to solicit new business and marketed its treatments to the public despite a lack of "scientifically credible evidence" to support the treatments. *Id.* at ¶¶ 51, 54.

22. Ms. Rivero allegedly underwent treatment at Lung Institute's Tampa facility in or around April 2014. *Id.* at ¶¶ 25–31.

23. Ms. Mazza allegedly underwent treatment at Lung Institute's Tampa facility on or about March 19, 2014 and February 24, 2015. *Id.* at ¶¶ 32–38.

24. The Claimants initially asserted four causes of action in the SAC, but dismissed three of those causes of action on April 23, 2020, leaving only Count I, which asserted a claim under FDUTPA.

B. **Class Certification**

25. Claimants filed their Motion for Class Certification on August 30, 2019.

26. While the Claimants included allegations related to Lung Institute's alleged express misrepresentations in the SAC, the Motion for Class Certification was more narrowly focused on only alleged omissions in Lung Institute's

marketing practices that allegedly violated FDUTPA.

27. On May 22, 2020, the court granted Claimants' Motion for Class Certification (the "Class Certification Order").[3]

28. In the Class Certification Order, the court held that "this is a marketing omissions case" and identified three omissions that could form the basis for liability. Specifically, the court noted that Lung Institute "failed to inform its prospective patients that: its patient coordinators were incentivized sales people; [it] had not conducted any human clinical trials; and [that] there was nothing to prove that the treatment was effective for people, only animals." *Id.*

29. 1,052 class members were ultimately identified (the "Class").

**C.   The Trial**

30. Trial in the Underlying Lawsuit began on June 3, 2024 and concluded on June 14, 2024.

31. The only cause of action before the jury was the FDUTPA claim based on alleged omissions in Lung Institute's marketing.

32. On information and belief, prior to the verdict being rendered, the parties stipulated in open court that if the jury found in the Claimants' favor, the damages would be $9,077,749.48 – the amount that the Class paid Lung Institute for the services in question.

---

[3] A true and correct copy of the Order granting Claimants' Motion for Class Certification is attached as Exhibit C.

33. The jury was asked to answer the following questions on the Verdict Form:

   a. Whether the Defendant, Lung Institute, LLC engaged in a deceptive or unfair act or a deceptive or unfair practice, by way of omissions, in the conduct of its trade or commerce?

   b. Whether a deceptive or unfair act or a deceptive or unfair practice, by way of omissions, by the Defendant Lung Institute, LLC was the legal cause of damage to the [Claimants]?

   c. Was the service offered by the Lung Institute, LLC valueless?

   d. Whether the [Claimants] waived their claim by signing the Informed Consent form?[4]

34. On June 14, 2024, the jury returned a verdict answering "yes" to questions 1, 2, and 3, and "no" to question 4. *See* Ex. D.

35. Following trial, the parties to the Underlying Lawsuit filed several post-trial motions, including, on June 27, 2024, a Motion to Tax Attorney's Fees and Costs (filed by the Claimants).[5]

**D.   The Policy**

36. CSIC issued Healthcare Organizations Liability Insurance Policy No. MM20152340 to RMS for the April 9, 2015 to April 9, 2016 **Policy Period**. Ex. A, Policy, Declarations, Items 1–2.

---

[4] A true and correct copy of the jury verdict form is attached as Exhibit D.

[5] A true and correct copy of the Motion to Tax Attorney's Fees and Costs, which remains pending at the time of this filing, is attached as Exhibit E.

37. Lung Institute is an Additional **Insured**. *Id.* at Common Policy Conditions Section II, as amended by Endorsement No. 9.

38. Subject to the Policy's terms and conditions, the Occurrence Limit of Liability provided by the Policy is $1,000,000 and the Aggregate Limit of Liability for all Occurrences is $3,000,000. *Id.* at Declarations, Item 3.

39. The Policy is comprised of four insuring agreements – Professional Liability (claims-made), General Liability (occurrence), Employee Benefits Liability (claims-made), and Sexual Misconduct Liability (claims-made). *Id.*

40. Subject to a reservation of rights, CSIC is providing Lung Institute with a defense under the General Liability Insuring Agreement.

41. The Policy's General Liability Insuring Agreement provides:

**I. INSURING AGREEMENT**

OCCURRENCE GENERAL LIABILITY INSURANCE

**We** will pay on behalf of the **Insured**, **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for **Bodily Injury**, **Property Damage**, **Advertising Injury**, **Personal Injury** or **Damage to Premises Rented to You** that is caused by an **Occurrence** that takes place during the **Policy Period**, subject to the applicable Limit of Liability. The amount we will pay for **Loss** is limited as described in Section IV. Limits of Liability and Deductible.

*Id.* at GL Coverage Form Section I.

42. "**Advertising Injury**" is defined to mean, in relevant part, "an injury arising out of one or more of the following offenses: … d. false, incorrect or misleading publication by the **Named Insured** concerning the type, scope or

9

quality of **Medical Services** offered by the **Named Insured**." *Id.* at Common Policy Conditions Section III.b.

43. "**Medical Services**" is defined to mean, in relevant part, "healthcare, medical care, or treatment provided by any individual ...." *Id.* at Section III.t.

44. The Policy's Exclusion m. precludes coverage for:

**Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

m. Knowingly False or Repeated Publication

**Personal Injury** or **Advertising Injury** arising out of oral or written publication of material:

a. if done by or at the direction of an **Insured** with knowledge of its falsity; or

b. whose first publication took place before the Inception Date set forth in the Declarations.

*Id.* at Section IV.m.

45. The Policy defines **Loss** to mean:

[A]mounts that an **Insured** becomes legally obligated to pay in connection with a **Claim** covered under this Policy. **Loss** includes:

a. settlements;
b. judgments;
c. pre-judgment and post-judgment interest on any settlement or judgment, where required by law; and
d. punitive and/or exemplary damages, to the extent that such
   coverage is permitted by law.

**Loss** does not include:

a. **Defense Expenses**;

10

      b.    amounts for which an **Insured** is not legally liable;
      c.    taxes;
      d.    any refund of an **Insured's** fees, profits or charges;
      e.    fines or penalties;
      f.    the multiplied portion of any multiplied damages award;
      g.    benefits under an **Employee Benefits Program**;
      h.    relief or redress in any form other than monetary compensation or monetary damages, including without limitation the cost of complying with any injunctive, declaratory or administrative relief;
      i.    costs or fees awarded in favor of the claimant; or
      j.    amounts deemed uninsurable under applicable law.

*Id.* at Section III.r.

### E. <u>Coverage Position</u>

46.    CSIC first learned of the Underlying Lawsuit on or about August 23, 2016, when Lung Institute tendered the Underlying Lawsuit for coverage.

47.    On September 7, 2016, CSIC issued its initial coverage letter, advising that it would defend Lung Institute subject to a reservation of rights.[6] CSIC expressly reserved the right "to decline or limit coverage should this matter fall outside of the coverage of the Policy, or if any of the exclusions set forth in the Policy . . . prove to be applicable." *See* Ex. F at p. 1.

48.    On June 25, 2020, after the Claimants withdrew all counts in the SAC except for the FDUTPA count, CSIC issued a supplemental coverage letter.[7] Therein, CSIC advised Lung Institute that it would continue defending Lung

---

[6] A true and correct copy of the September 7, 2016 reservation of rights letter to Lung Institute is attached hereto as Exhibit F.

[7] A true and correct copy of the June 25, 2020 reservation of rights letter to Lung Institute is attached hereto as Exhibit G.

Institute, subject to a reservation of CSIC's "rights to deny or limit coverage for the Lawsuit." Ex. G at p. 1. Further, CSIC specifically advised that "[t]o the extent any of the alleged material on which the Lawsuit is based was first published before April 9, 2015, there is no coverage." *Id.* at p. 3. CSIC again informed Lung Institute that coverage may be precluded pursuant to the Policy's definition of **Loss**. *Id.*

49. On February 24, 2023, CSIC issued another supplemental coverage letter.[8] Therein, CSIC stated "the Policy will not provide any indemnity coverage in the event that liability ultimately is established against Lung Institute." Ex. H at p. 1; *see also id.* at pp. 7–8 (detailing application of Exclusion m. and the definition of **Loss**).

50. On November 20, 2023, CSIC issued an additional supplemental coverage letter, again advising that "the Policy will not provide any indemnity coverage in the event that liability ultimately is established against Lung Institute."[9]

51. On July 10, 2024, CSIC issued another supplemental coverage letter to Lung Institute advising it that pursuant to Exclusion m.b. and the Policy's definition of **Loss**, the Policy will not provide Lung Institute with coverage for the jury award and/or the award of attorneys' fees and costs that Claimants' counsel is asking the court to enter as a result of the jury's decision.

---

[8] A true and correct copy of the February 24, 2023 reservation of rights letter to Lung Institute is attached hereto as Exhibit H.

[9] A true and correct copy of the November 20, 2023 reservation of rights letter to Lung Institute is attached hereto as Exhibit I.

12

## **COUNT I – Declaratory Judgment**

52. CSIC repeats and incorporates herein by reference paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Exclusion m. broadly precludes coverage for **Advertising Injury** "arising out of oral or written publication of material . . . whose first publication took place before the Inception Date set forth in the Declarations." Ex. A, Common Policy Conditions Section IV.m.b.

54. The Claimants alleged specific **Advertising Injury** – three omissions – that began in 2012 or earlier, and continued until August 2016. The jury found that Lung Institute engaged in the alleged unfair and deceptive conduct – the three omissions detailed in the Class Certification Order. In other words, the jury found that **Advertising Injury** arose out of the oral or written publication of material that began before the Policy incepted on April 9, 2015 and continued until the end of class period on August 17, 2016.

55. Because the omissions giving rise to **Advertising Injury** were first published before the Policy incepted on April 9, 2015 and continued throughout the class period, coverage for the Lawsuit is precluded by Exclusion m.b.

56. CSIC seeks a declaratory judgment that pursuant to Exclusion m.b. it has no duty to indemnify Lung Institute in connection with the Underlying Lawsuit.

## COUNT II – Declaratory Judgment

57. CSIC repeats and incorporates herein by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. Any refund of Lung Institute's fees, profits or charges is specifically excluded from the Policy's definition of **Loss**. Ex. A, Common Policy Conditions Section III.r.d.

59. On information and belief, prior to the verdict being rendered, the parties stipulated in open court that if the jury found in the Claimants' favor, the damages would be $9,077,749.48 – the amount that the Class paid Lung Institute for the procedures in question.

60. Claimants seek entry of a final judgment in the amount of $9,077,749.48 – a refund of the amounts paid for the "valueless" services provided.

61. CSIC seeks a declaratory judgment that it has no duty to indemnify Lung Institute for the final judgment in the amount of $9,077,749.48 that Claimants seek entry of in the Underlying Lawsuit because that amount is for the refund of amounts charged by Lung Institute for the services it provided and is excluded from the Policy's definition of **Loss** by Section III.r.d. of the Policy's Common Terms and Conditions.

## **COUNT III – Declaratory Judgment**

62. CSIC repeats and incorporates herein by reference paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. "[A]mounts deemed uninsurable under applicable law" are excluded from the Policy's definition of **Loss**. Ex. A, Common Policy Conditions Section III.r.j.

64. Under Florida law, insurance contracts cannot insure the restitution of ill-gotten gains.

65. The jury determined that Lung Institute, LLC engaged in a deceptive or unfair act or a deceptive or unfair practice, by way of omissions, in the conduct of its trade or commerce.

66. Claimants seek entry of a final judgment in the amount of $9,077,749.48 – a refund of the amounts paid for the "valueless" services provided.

67. CSIC seeks a declaratory judgment that it has no duty to indemnify Lung Institute for the final judgment in the amount of $9,077,749.48 that Claimants seek entry of in the Underlying Lawsuit because that amount represents "ill-gotten gains" and is excluded from the Policy's definition of **Loss** by Section III.r.j. of the Policy's Common Terms and Conditions.

## COUNT IV – Declaratory Judgment

68. CSIC repeats and incorporates herein by reference paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. Any costs or fees awarded in favor of Claimants are excluded from the Policy's definition of **Loss**. Ex. A, Common Policy Conditions Section III.r.i.

70. The Policy's definition of **Loss** also excludes the multiplied portion of any multiplied damages award. *Id.* at III.r.f.

71. After the jury trial, Claimants filed a Motion to Tax Attorney's Fees and Costs, seeking an award of attorneys' fees and costs incurred in litigating the Underlying Lawsuit.

72. In the Motion to Tax Attorney's Fees and Costs, Claimants also seek attorneys' fees "with an appropriate contingency risk multiplier."

73. The Policy's definition of **Loss** excludes coverage, in its entirety, for an award of attorneys' fees and costs, as well as any multiplied damages.

74. CSIC seeks a declaratory judgment that it has no duty to indemnify Lung Institute in connection with the Claimant's request for an award of attorneys' fees and costs in the Underlying Lawsuit, including any contingency risk multiplier, because they are not **Loss**, as that term is defined in the Policy.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff CSIC respectfully requests that this Court:

A. Issue a declaratory judgment that the Policy provides no indemnity coverage to Lung Institute for the Underlying Lawsuit;

B. Issue a declaratory judgment that CSIC has no duty to indemnify Lung Institute for the final judgment the Claimants seek entry of in the Underlying Lawsuit;

C. Issue a declaratory judgment that CSIC has no duty to indemnify Lung Institute for any award of attorneys' fees and/or costs to Claimants in the Underlying Lawsuit, including any contingency risk multiplier; and

D. Order all other relief this Court deems proper and just.

Dated: September 6, 2024.

        Respectfully submitted,

        */s/ John E. Johnson*
        JOHN E. JOHNSON
        Florida Bar No. 593000
        jjohnson@jnd-law.com
        **JOHNSON, NEWLON & DECORT, P.A.**
        3242 Henderson Blvd., Suite 210
        Tampa, Florida 33609
        Secondary: bwalker@jnd-law.com;
        mpatel@jnd-law.com
        Telephone (813) 699-4859
        Facsimile: (813) 235-0456

        -and-

        TROUTMAN PEPPER HAMILTON
        SANDERS LLP

Charles A. Jones (*pro hac vice to be filed*)
tony.jones@troutman.com
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Telephone:  804.697.1200
Facsimile:   804.697.1339

Jordan M. Rubinstein (*pro hac vice to be filed*)
Jordan.rubinstein@troutman.com
Cassidy P. Webb (*pro hac vice to be filed*)
cassidy.webb@troutman.com
401 9th Street NW, Suite 1000
Washington, DC 20004
Telephone:  202.662.2030
Telephone:  202.274.2950

*Attorneys for Plaintiff*
