UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAPITOL SPECIALTY
INSURANCE CORPORATION,

    Plaintiff,

v().                                             CASE NO. 8:24-cv-2119-SDM-LSG

TAMMY RIVERO, et al.,

    Defendants.
_____/

## ORDER

In 2016, Tammy Rivero and Marylan Mazza, individually and on behalf of a putative class, sued Lung Institute, LLC, in Florida's Thirteenth Judicial Circuit. The complaint alleged that Lung Institute marketed ineffective and fraudulent "stem-cell" therapy "through . . . convoluted, deceptive marketing, advertising and targeted sales calls" to prospective elderly clients. (Doc. 1-2 at 5)  Each plaintiff paid (out-of-pocket) for and received the "stem-cell" therapy but realized no improvement. (Doc. 1-2 at 8–9)  The complaint included "class representation allegations," which purported to "bring [the] suit on behalf of all persons who have received [Lung Institute's] stem-cell therapy . . . for the four years prior to the filing of the [first complaint]."

Upon Rivero and Mazza's motion for class certification, a state-court order (Doc. 1-3) certified a class "comprised of Plaintiffs and all other persons similarly

situated who underwent venous, adipose and/or bone marrow stem cell therapy, and/or supplemental therapies, for the four years prior to filing of the initial complaint at the Lung Institute." A jury found that Lung Institute "engaged in a deceptive or unfair act or a deceptive or unfair practice." In accord with Rule 1.220(d)(3), Florida Rules of Civil Procedure, the final judgment identifies each member of the class, which comprises 1,075 members.[1]

According to this action's complaint (Doc. 1), Capitol Specialty Insurance Corporation insures Lung Institute. Capitol sues Lung Institute and requests a declaration that the insurance policy provides no coverage for the judgment against Lung Institute. The complaint, in addition to Lung Institute, names as defendants Tammy Rivero and Marilyn Mazza "in their capacity as representatives of the class [certified in the state-court class action] and in lieu of naming every class member as a nominal defendant." Under Rule 25(c), Federal Rules of Civil Procedure, an April 2, 2025 order (Doc. 51) substitutes Larry Hyman (Lung Institute's receiver) for Lung Institute.

Rivero and Mazza move (Doc. 33) to dismiss the complaint, and Hyman joins (Doc. 34) Rivero and Mazza's motion, which argues (1) that the complaint fails to name several indispensable parties — the remaining members of the class — and (2) that inclusion of four class members will destroy diversity jurisdiction.

Capitol responds (Doc. 48) and argues that, although "the issued raised in [each defendant's motion] is not often before any federal court," the "weight of

---

[1] Although Capitol states (Doc. 48 at 2) that the class comprises 1,052 members, the judgment lists 1,075 names.

- 2 -

authority . . . requires only the insured and the named class representatives to be parties to the declaratory action." Capitol affirms no intent "for this to be a class action" and affirms no attempt to "plead it as a class action." If this order determines that proceeding as a class action is necessary, Capitol requests "leave to amend the complaint accordingly."

Capitol frames "the precise issue of this dispute" as "whether unnamed class-members are indispensable parties to a coverage action." The parties agree that under *Ranger Insurance Company v. United Housing of New Mexico*, 488 F.2d 682, 683 (5th Cir. 1974), a tort claimant is an indispensable party to a declaratory judgment action between the tortfeasor and the tortfeasor's insurer. The defendants argue that, because the "resolution of this case will affect the Class Members' ability to recover the damages allocated to them under the Judgment," the remaining class members must join this action. Capitol responds that the defendants' argument conflicts "with the notion of Class Representatives."

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 13:28 (4th ed. 2002), explains that a class member — upon joining the class — forfeits any individual claim. This forfeiture means that no class member has a claim, and therefore no class member is a "claimant." Although the parties agree that any "tort claimant" must join this action, the parties have failed to show that any class member is a "claimant."

The principle that a "tort claimant" is an "indispensable party to the insurer's declaratory judgment action" derives from *Ranger Insurance Company v. United*

- 3 -

*Housing of New Mexico, Inc.*, 488 F.2d 682 (5th Cir. 1974), which involves "a declaratory judgment action brought by the [insurer] seeking to establish that, under the coverage provisions of its insurance contract . . . [the insurer] is not liable for claims arising from a fatal crash of the insureds' plane." The district court dismissed the action for failing to join each party claiming damages against the insured. By analyzing the action under Rule 19(a) and Rule 19(b), Federal Rules of Civil Procedure, *Ranger* decides whether the unnamed parties — the "claimants" — were "indispensable parties." The particular insurance policy inextricably underpins *Ranger*'s conclusion that the insurer "failed to carry its burden of establishing" that the action can proceed without prejudice against the "claimants." For example, *Ranger* reasons, "While a judgment in favor of the appellant probably would not operate to bar the absent claimants from proceeding under the policy's direct action clause, we are satisfied that the claimants' interests would be prejudiced."

Despite the particularized Rule 19 analysis supporting *Ranger*'s decision, the defendants request strict application of a "principle" derived from *Ranger*. Rule 19, however, developed to directly combat "thoughtless labelling based on legal relationship rather than on ad hoc analysis of relevant factors and the underlying policy." 4 *Moore's Federal Practice*, § 19.02[2][c] (Matthew Bender 3d ed.).

*Shields v. Barrow*, 58 U.S. 130 (1855), is the seminal decision distinguishing "necessary party" from "indispensable party" and explicating the "principles of compulsory joinder." *Moore's* § 19.02[2][c]. Despite *Shields*, "lawyers and courts did not always carefully analyze particular cases. The practice came to be dominated by

- 4 -

efforts simply to label absentees as necessary or indispensable based not on the facts of the case but on a sense that certain types of cases always involved one or the other." *Moore's* § 19.02[2][c].  The first version of the Federal Rules of Civil Procedure failed to proscribe the "lamentable exercise in labeling without critical thought." *Moore's* § 19.02[2][c].  The first version's failure to establish "factors relevant to the assessment of indispensability" enabled the continuation of this "lamentable exercise" and implicitly advanced the notion that "absentees in particular kinds of cases automatically fell into one or another category, without looking at the facts of the case." *Moore's* § 19.02[2][c].

In response to the "thoughtless labelling," which provoked "trenchant scholarly criticism," the 1966 amendment to the Federal Rules of Civil Procedure required a "flexible, pragmatic, fact-based inquiry of compulsory joinder issues," a salutary goal that the Rule 19 currently incorporates and achieves. *Moore's* § 19.02[2][c]; *Provident Tradesman Bank & Trust Company v. Providence*, 390 U.S. 102 (1968).  Rule 19 requires a "pragmatic analysis of whether nonjoinder may implicate" one of the three policy interests that "outweigh plaintiff autonomy in the structuring of litigation." *Moore's* § 19.02[2][c].

The defendants' urge to apply *Ranger* exhibits a "failure to understand that 'indispensable' is a label placed on the absentee after completing an analytical process and concluding that the pending action must be dismissed." *Moore's* § 19.02[2][c]. *Ranger* itself teaches that Rule 19 governs compulsory joinder and demonstrates the individualized analysis required under Rule 19.  Because the defendants provide no

- 5 -

analysis under Rule 19, the defendants fail to establish that any class member is an "indispensable party."

In any event, a "pragmatic" analysis under Rule 19 militates decidedly against compulsory joinder of each class member.  The state court certified a class and appointed two class representatives, who must "fairly and adequately protect and represent the interests of each member in the class."  The state-court judgment binds each absent class member — not through any class member's participation in the action but through representation by Rivero and Mazza.  Because Rivero and Mazza, on behalf of the class, must enforce, collect, and distribute to the class the proceeds of the state-court judgment, this declaratory action, which purports to determine who, if anyone, must pay the judgment, affects only the judgment debtor, the judgment debtor's insurer, and Rivero and Mazza, as the duly certified class representatives, authorized and required to act on behalf of, and in the best interest of, the class.  Although not individually named in the complaint and individually served process, each class member is "present" in this action through their lawfully certified class representatives.  The judgment will afford complete relief, and both the law and the ends of justice require the joinder of only the class representatives.  Accordingly, each motion (Doc. 33 and 34) is **DENIED**.

ORDERED in Tampa, Florida, on August 20, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE